## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GREGORY M. GOTTA, individually and
on behalf of all others similarly situated,

               Plaintiff,

    v.

PORSCHE CARS NORTH AMERICA,
INC., AUDI OF AMERICA, LLC, AUDI
OF AMERICA, INC., AUDI AG,
VOLKSWAGEN AG, and DOES 1 through
100, inclusive,

               Defendant.

Civil Action No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Gregory M. Gotta ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against defendants Porsche Cars North America, Inc. ("Porsche") and Audi of America, LLC, Audi of America, Inc., and Audi AG (collectively, "Audi") Volkswagen AG ("Volkswagen") (collectively, with Porsche and Audi, "Defendants").

### NATURE OF THE ACTION

1.    This nationwide class action concerns Defendant's false, deceptive and misleading marketing and advertising of its purportedly "clean diesel" and environmentally friendly vehicles, when, in reality, Defendants' vehicles do not contain these advertised attributes.  Specifically, this action concerns Porsche's 2013, 2014, 2015 and 2016 3.0 liter Cayenne Diesel vehicles and Audi's 2014, 2015, and 2016 A6 Quattro Diesel vehicles (the "Defective Vehicles").

2.      Defendants advertise their Defective Vehicles as being high performing, efficient, and low emission vehicles compared to other hybrid competitors on the market.[1]  For instance, Porsche states on its website that, "we believe in quality, not quantity when it comes to building cars…an attitude with long tradition at Porsche."[2] Porsche explains that its Defective Vehicles have  "piezoelectric injectors [that] enable multiple injections at a pressure of up to 2,000 bar, ensuring optimum distribution of the air/fuel mixture – for improved dynamics…combined with the channeling of the intake air, this ensures a particularly high charging effect, thereby generating impressive torque, even at low engine speeds…"[3]

3.      Similarly, Audi claims that consumers are "Getting more from less" from its Defective Vehicles.[4]  Audi explains that it "pioneered TDI® clean diesel engines to deliver more torque, lower fuel consumption and reduce CO2 emissions, compared to equivalent gasoline engines.  The result of this revolutionary engineering delivers remarkable performance, while achieving increased fuel economy."[5]

4.      Despite Defendants' representations, their vehicles produce pollutants that exceed allowable state and federal regulations by *up to 40 times* the legal limit.  Ordinarily, vehicles emitting such high levels of pollutants would not be approved for sale in the United States. However, in order for their vehicles to emit such high pollution levels while remaining undetected by legal authorities, Defendants installed a sophisticated software, or "defeat device", in their

---

[1] http://www.porsche.com/usa/models/cayenne/cayenne/drive/character/;
https://web.archive.org/web/20150928180733/http://www.audiusa.com/technology/efficiency/tdi
(last visited Feb. 11, 2016).
[2] *Id.*
[3] http://www.porscheofsanantonio.com/porsche-hybrid-and-diesel-models.htm.
[4] Upon information and believe, this representation was made in or around September 2015 but is no longer available through Audi's website as of February 11, 2016. *See* https://web.archive.org/web/20150928180733/http://www.audiusa.com/technology/efficiency/td.
[5] *Id.*

vehicles which operate by switching on the full emissions control systems in Defendants' vehicles only when the car is undergoing emissions testing. In other words, the defeat device is able to sense when a vehicle is being tested for compliance with emissions standards and instructs the vehicle to "defeat" the emissions test so as to appear in compliance. Once the vehicle determines that the emissions test is over, the defeat device shuts off the emissions control systems, which allows the vehicle to emit approximately nine (9) times as much pollution into the environment as is legally allowed under the Clean Air Act ("CAA") and various state regulations.

5.     Defendants have intentionally and systematically lied and deceived its customers about their diesel vehicles for over six years.

6.     Plaintiff bought not one, but two Defective Vehicles.  Specifically, Plaintiff purchased a 2014 Porsche Cayenne Diesel in August of 2014, and purchased a 2014 Audi A6 TDI Diesel in October of 2013.  Plaintiff purchased these Defective Vehicles for, among other reasons: (a) their purported compliance with federal and state emissions laws; (b) their purported environmentally friendly design; (c) their purported superior fuel efficiency; (d) their purported ability to achieve high performance while simultaneously emitting low to moderate exhaust emissions; (e) their purported lower $CO_2$ emissions when compared to gasoline vehicles; (f) their superior torque and quick acceleration; (g) their lower fuel consumption; (h) their purported eco-friendly design; (i) their marketing and advertising, including statements about the Defective Vehicles being green, environmentally friendly, or having comparatively low emissions values to gasoline vehicles.

7.     Had Plaintiff known that Defendants' Defective Vehicles did not contain the eco-friendly and emissions conscience attributes as advertised and listed above, Plaintiff would not have purchased the Defective Vehicles.

8.     Plaintiff, on behalf of himself and others similarly situated, seeks redress for Defendants' misrepresentations by awarding equitable relief including disgorgement of wrongful profits and compensatory, punitive, and statutory damages. Further, Plaintiff seeks injunctive relief to compel Defendants to remove all illegal "defeat devices" and any such further relief as the Court deems appropriate.

**PARTIES**

9.     Plaintiff is a citizen of the State of Massachusetts, residing in Northbridge, Massachusetts.  On or about October 16, 2013, Plaintiff purchased a 2014 Audi A6 TDI (diesel) vehicle from Audi Shrewsbury, which is an authorized Audi dealer located at 780 Boston Turnpike, Shrewsbury, Massachusetts.  On or about August 27, 2014, Plaintiff purchased a 2014 Porsche Cayenne Diesel from Porsche of Nashua, which is an authorized Porsche dealer located at 170 Main Dunstable Road, Nashua, New Hampshire.

10.     Defendant, Porsche Cars North America, Inc., is a Delaware corporation with its principal place of business in Atlanta, Georgia. At all relevant times hereto, Defendant was authorized to and was doing business in New Hampshire, Massachusetts and the United States. North America is Porsche's largest market[6] with a revenue between 50-100 million dollars.[7]

11.     Defendant Audi AG is a car corporation organized and existing under German law, with its principal place of business in Ingolstadt, Germany.  Audi was created when Volkswagen AG merged two of its companies, Auto Union and NSU Motorenwerke AG.  Audi is a 99.55%-

---

[6] http://www.hoovers.com/company-information/cs/company-profile.Porsche_Cars_North_America_Inc.8e605aba710e6b12.html.
[7] www.glassdoor.com.

owned subsidiary of Volkswagen Group of America, Inc.  Audi is Volkswagen's luxury vehicle brand, and uses the slogan "Truth in Engineering."

12.     Defendant Audi of America, LLC is a subsidiary of Audi AG that sells Audi vehicles in the United States.  Its headquarters are located in Herndon, Virginia.

13.     Defendant Audi of America, Inc. is a subsidiary of Audi AG that markets and distributes Audi vehicles in the United States.  Its headquarters are located in Herndon, Virginia.

14.     Defendant Volkswagen AG is an automobile manufacturing corporation organized and existing under German law, with its principal place of business in Wolfsburg, Germany. Volkswagen AG is the parent company of defendants Porsche and Audi.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (a) there are 100 or more members in the proposed class; (b) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs; and (c) at least one member of the Class is a citizen of a state different from at least one Defendant.

16.     Personal jurisdiction over Defendants is proper because Defendants: (a) transact business in this District; (b) contracted to supply goods or services in this District; (c) caused injury by an act or omission in this District; and/or (d) caused tortious injury in this District by an act or omission made outside this District where they regularly conduct or solicit business, or engage in a persistent course of conduct in this District, or derive substantial revenue from goods used or services rendered in this District.  Defendants have, through their actions, established sufficient minimum contacts with the State of Massachusetts such that exercise of jurisdiction over Defendants by this Court would not offend traditional notions of fair play and substantial justice.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.  Defendants conduct substantial business in this District, have marketed and advertised their Defective Vehicles in this District, and have caused harm to Plaintiff in this District.

## FACTUAL ALLEGATIONS

### A. Emissions Standards Enforced By The Environmental Protection Agency And Clean Air Act

18.     Congress enacted the Clean Air Act to "protect and enhance the quality of the Nation's air resources so as to promote public health and welfare" and to "prevent[ ] and control [ ] air pollution." CAA § 101(b)(1)-(2).  The CAA aims, in part, to reduce nitrogen oxides ("NOx") and various other pollutants emitted by automobiles in an effort to improve air quality.

19.     As explained by the Environmental Protection Agency ("EPA"), the elimination or reduction of NOx is important for health and safety reasons:

> NOx pollution contributes to harmful ground-level ozone and fine particulate matter. Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses. Exposure to ozone and particulate matter has also been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory disease are particularly at risk of health effects from exposure to these pollutants.[8]

20.     Through the Clean Air Act, the Environmental Protection Agency ("EPA"), in coordination with state and local governments, is authorized to regulate vehicle emissions.  Thus, every vehicle introduced into interstate commerce in the United States, including sports utilities

---

[8] United States Environmental Protection Agency, 2015 News Releases, http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/4a45a5661216 e66c85257ef10061867b!OpenDocument (released 11/2/15).

vehicles ("SUVs") such as Porsche's, Audi's and Volkswagen's Defective Vehicles, are regulated by the CAA and must satisfy emission standards.

21.    To ensure compliance with industry standards, the EPA issues certificates of conformity ("COC")[9] to every compliant vehicle.  Accordingly, all auto manufacturers must submit a COC application for approval.  While the EPA audits a small fraction of the new vehicles each year to ensure compliance, the EPA relies on the representations and test data submitted by automobile manufacturers in granting COCs.

22.    As part of the application process, manufacturers must submit a list of all auxiliary emission control devices ("AECDs").  AECDs are devices that influence and affect emission controls in vehicles.[10]

23.    One type of AECD is a "defeat device", which reduces the effectiveness of an emission control system in a vehicle. According to CAA standards, cars with "defeat devices" are denied certification because a COC only covers cars that conform "in all material respects" as described in the manufacturer's application for the COC. 40 C.F.R. §86.1848-10(c)(6).

24.    In fact, the CAA makes it unlawful to manufacture or sell vehicles with any type of defect device that bypasses compliance regulations for motor vehicles:

> For any person to manufacture, sell or offer to sell, or install, any part or component intended for use with, or as part of, any vehicle or engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a vehicle or engine in compliance with regulations issued under this subpart, and where the person knows or should know that the part or component is being offered for sale or installed for this use or put to such use.

CAA §203(a0(3)(B), 40 C.F.R. §86.1854-12(a)(3)(ii).

---

[9] 40 C.F.R. § 86.1811-04.
[10] 40 C.F.R. § 86.1811-04.

**B. Defendants' Falsely Advertise Their Defective Vehicles As Being Environmentally Friendly**

25.     Historically, diesel cars have been unable to comply with the EPA's NOx emissions requirements.  Although diesel vehicles are generally more fuel efficient and powerful than gasoline engines, they emit higher levels of pollutants as a by-product of combustion making them unappealing to some consumers.  Beginning in 2008, however, Volkswagen launched a "clean diesel" campaign, emphasizing that its diesel vehicles were environmentally friendly, fuel efficient, and of high-quality performance.

26.     Upon information and belief, Defendants have continued to market and advertise their Defective Vehicles as environmentally friendly and green throughout the Class Period.[11]  For instance, Porsche advertises on its website that, "We [Porsche] have demonstrated that even high-performance sports car can achieve comparatively moderate exhaust emission values."[12]

27.     As illustrated below, Porsche touts its ability to create a "sporty" vehicle while maintaining "enhanced performance and fuel economy":[13]

---

[11] The Class Period is 2013 through the present. *See infra* ¶42.

[12] http://www.porsche.com/usa/models/cayenne/cayenne/environment/environmentalism/.

[13] http://www.porsche.com/international/models/cayenne/cayenne-diesel/concept/character/.

## Character
Cayenne Diesel



## Character

It's great when the dream of a sports car can also go the distance: the Cayenne Diesel. With enhanced performance and fuel economy. In the Cayenne Diesel, you can drive responsibly – without having to compromise on enjoyment behind the wheel.

The piezoelectric injectors enable multiple injections at a pressure of up to 2,000 bar, ensuring optimum distribution of the air/fuel mixture – for improved dynamics. Other performance-enhancing technologies include Variable Turbine Geometry (VTG). Combined with the channelling of the intake air, this ensures a particularly high charging effect, thereby generating impressive torque, even at low engine speeds.

As a diesel too, the Cayenne continues its sporty success story. Bridging the gap between dynamic agility and efficiency, and packed full of enthusiasm. Not only on longer journeys.

28.     Similarly, Audi's Defective Vehicles are advertised as being "kind to the planet" and generating "12% lower CO2 emissions than gasoline":[14]



29.     Audi touts the benefits of its Defective Vehicles over gasoline vehicles:[15]

---

[14] *See supra,* n. 4.
[15] *Id.*



### Intelligent performance
Efficiency shouldn't feel this powerful.

Audi TDI® clean diesel technology is packed with low-end torque, giving you incredible acceleration and passing power. So even though you feel the power kick in at higher speeds, the ingenious TDI® engine helps reduce fuel consumption.

\*      \*      \*



**There's more to a drop**
Fuel density is fuel destiny.

With astonishing benefits, TDI® exploits fuel, ensuring you get more from each drop. Each contains 15% more energy than gasoline, translating to 30% better fuel economy and 20% fewer trips to the pump. That's time you get back to experience all of life's little luxuries.

\*       \*       \*

## 🔍 | Audi TDI® clean diesel



Getting more from less. Audi pioneered TDI® clean diesel engines to deliver more torque, lower fuel consumption and reduce CO2 emissions, compared to equivalent gasoline engines. The result of this revolutionary engineering delivers remarkable performance, while achieving increased fuel economy.



**Fuel for thought**
*Unleashing the power of diesel.*

We thought you should know: Diesel sports a greater power density than traditional gasoline, which means that a gallon of diesel fuel has about 15% more energy than a comparable amount of gas, and combusts more efficiently in the engine.

30.     As detailed herein, Defendants' marketing and advertising of their Defective Vehicles as being eco-friendly and fuel efficient are false, misleading and deceptive because the Defective Vehicles actually emit pollutants that exceed legal limits and emissions standards.

**C. Defendants Intentionally Designed and Installed A Defeat Device To Evade Emissions Standards**

31.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV") stating that certain of Audi's and Volkswagen's 2009-2015 diesel vehicles contained illegal defeat devices in violation of the CAA.[16]

32.     On November 2, 2015, the EPA issued a second NOV (the "Second NOV") stating that Volkswagen, Porsche and Audi had sold certain diesel vehicles, including the Defective Vehicles, with "defeat device" software. According to EPA's Second NOV, Defendants' defeat devices increase the level of emissions of NOx in the Defective Vehicles by up to nine times the EPA's allowable standard.

33.     As explained in the Second NOV, Defendants' defeat device works as follows:

[Porsche] manufactured and installed software in the electronic control module of these vehicles that senses when the vehicle is being tested for compliance with EPA emissions standards. When the vehicle senses that it is undergoing a federal emissions test procedure, it operates in a low NOx "temperature conditioning" mode. Under that mode, the vehicle meets emission standards. At exactly one second after the completion of the initial phases of the standard test procedure, the vehicle immediately changes a number of operating parameters that increase NOx emissions and indicates in the software that it is transitioning to "normal mode," where emissions of NOx increase up to nine times the EPA standard, depending on the vehicle and type of driving conditions. In other tests where the vehicle does not experience driving conditions similar to the start of the federal test procedure, the emissions are higher from the start, consistent with "normal mode.[17]

34.     In other words, the defeat device software in the Defective Vehicles triggers two forms of "switches". When tested for EPA emission standards, the software triggers a "switch"

---

[16] United States Environmental Proection Agency, 2015 News Room, http://yosemite.epa.gov/opa/admpress.nsf/a883dc3da7094f97852572a00065d7d8/dfc8e33b5ab16 2b985257ec40057813b!OpenDocument (released 9/18/15).
[17] United States Environmental Protection Agency, 2015 News Releases, http://yosemite.epa.gov/opa/admpress.nsf/21b8983ffa5d0e4685257dd4006b85e2/4a45a5661216 e66c85257ef10061867b!OpenDocument (released 11/2/15).

that produces "compliant" emissions results.  During normal vehicle operation, the defeat device triggers a "switch" to a separate calibration, called "road calibration."  "Road Calibration" reduces the effectiveness of the emission control system, thereby increasing emissions of NOx 10 to 40 times above EPA's compliant levels.

36.     Upon information and belief, Defendants intentionally installed and implemented the "defeat device" to manipulate emission standards in order to obtain COC approval.  Although Defendants' defeat device is a form of AECD that must be reported in a COC application, Defendants intentionally failed to disclose the defeat device's installation to clandestinely obtain COC approval.

36.     On November 19, 2015, Defendants admitted that their Defective Vehicles had "defeat devices" installed in them.[18] Thus, Defendants intentionally violated federal and state law by knowingly marketing, advertising, selling and leasing its Defective Vehicles as "environmentally friendly" when, in reality, the Defective Vehicles produce nitrogen oxide omissions that are 10 to 40 times above the legal limit.

37.     On November 23, 2016, Audi announced a proposed remedy for the Defective Vehicles in the form of a software update.  The technical details of this fix have not been released and it is not clear how, if at all, this will impact the performance, operation or value of the Defective Vehicles.[19]

### D.  Plaintiff and the Class Have Been Injured

---

[18] http://www.epa.gov/vw.

[19] Audi submits 3.0 TDI fix to CARB, fingers Crossed, AUTOWEEK, (Feb. 3, 2016), http://autoweek.com/article/vw-diesel-scandal/audi-submits-30-tdi-fix-proposal-carb.

38.     As a result of Defendants' unlawful conduct, Plaintiff and the Class have been injured.   Specifically, by advertising their Defective Vehicles as "clean diesel" vehicles, Defendants were able to charge a premium for their Defective Vehicles.   According to one BloombergBusiness report, Volkswagen's ability to charge a premium for its Porsche and Audi vehicles exceeded the premium charged by their competitors:[20]



39.     The article concludes that because the additional gas mileage obtained from the Defective Vehicles does not cover or make up for the high cost of the vehicles, the majority of diesel purchasers are motivated by the environmentally friendly factor:

> The math on diesel has never been tidy. The additional mileage is great, but unless one drives a lot, it doesn't really cover the added expense for the engine and for the fuel itself. At current gas prices, the diesel premium on the Passat—some $5,755— would buy enough gas to drive the gas-burning model for about 88,000 miles. For the majority of diesel drivers, the factor that probably swung the decision was the apparent environmental benefit. The green aspect was the fulcrum.[21]

---

[20] http://www.bloomberg.com/news/articles/2015-09-23/volkswagen-s-other-diesel-ruse-premium-pricing.
[21] *Id.*

40.     Had Plaintiff known about the misrepresentations described above, he would not have purchased Defective Vehicles from Defendants.

41.     As a result of the Defendants' omissions and misrepresentations, Plaintiff and Class suffered losses in money and/or property.

## CLASS ALLEGATIONS

42.     **Class Definitions**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure (b)(2), and (b)(3) on behalf of himself  and a class of similarly situated individuals, defined as follows:

> All United States residents who, from 2013 through the present, purchased or leased a Defective Vehicle from Defendants **(The "Nationwide Class").**

Plaintiff also brings this action on behalf of the following Massachusetts subclass:

> All Massachusetts residents who, from 2013 through the present, purchased or leased a Defective Vehicle from Defendants **(The "Massachusetts Subclass" collectively, with the Nationwide Class, the "Class").**

Excluded from the above Class are Volkswagen, Porsche and Audi, including any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants.  Also excluded is any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

43.     **Numerosity**: The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiff is informed and believes there are tens of thousands of people in the Class who have been damaged by Defendants' conduct as alleged herein.  The number of members of the proposed Class is unknown to Plaintiff but can be discerned from the records maintained by Defendant.

44. **Commonality and Predominance**: This action involves common questions of law and

fact, which include, but are not limited to, the following:

(a) Whether Defendants' Defective Vehicles contain illegal "defeat" and "switch"

devices;

(b) Whether Defendants' Defective Vehicles caused excessive pollution emissions;

(c) Whether Defendants made unlawful and misleading representations or material

omissions regarding their Defective Vehicles;

(d) Whether Defendants' Defective Vehicles suffered a diminution in value as a result

of Defendants' deceptive business practices;

(e) Whether Defendants' conduct described herein constitutes unfair and deceptive

business practices in violation of Massachusetts General Law chapter 93A, §9;

(f) Whether Defendants' conduct described herein constitutes a breach of contract;

(g) Whether Defendants' conduct described herein constitutes a breach of express

warranty or implied warranty of merchantability;

(h) Whether Defendants' conduct was negligent;

(i) Whether Defendants were unjustly enriched; and

(j) Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive

damages, and/or injunctive relief.

45. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the

Class.  Plaintiff and members of the Class sustained damages as a result of the Defendants' uniform

wrongful conduct described above.

46.     **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in complex class action litigation. Plaintiff has no adverse or antagonistic interests to those of the Class.

47.     **Superiority**: A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and Class members, for at least the following reasons:

(a) Absent a class action, members of the Class as a practical matter will be unable to obtain redress, Defendants' violations of their legal obligations will continue without remedy, additional consumers will be harmed, and Defendants will continue to retain ill-gotten gains;

(b) It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

(c) When the liability of the Defendants have been adjudicated, the Court will be able to determine the claims of all members of the Class;

(d) A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

(e) A class action regarding the issues in this case does not create any problems of manageability; and

(f) Defendants have acted on grounds generally applicable to the members of the Class, making class-wide monetary relief appropriate.

## CAUSES OF ACTION

## COUNT I

**VIOLATION OF THE MASSACHUSETTS GENERAL LAW CHAPTER 93A**
**(On Behalf of Plaintiff and the Massachusetts Subclass)**

48.     Plaintiff realleges and incorporates herein the preceding paragraphs as though fully set forth herein.

49.     The Massachusetts General Law ("MGL") protects consumers against "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." MGL c. 93A, §2.

50.     Plaintiff and each member of the Massachusetts Subclass is a "person" as defined under c. 93A § 1(a) of the MGL.

51.     Defendants engaged in "trade" and "commerce" within the meaning of c. 93A § 1(b) of the MGL by advertising, offering for sale, selling, leasing or distributing their Defective Vehicles to consumers in Massachusetts.

52.     The Defendants engaged in unfair and deceptive trade practices by intentionally misleading consumers that their Defective Vehicles were of a particular standard, grade, and feature that they were not.

53.     Specifically, the Defendants failed to disclose that they used "defeat" and "switch" devices to alter and comply with CAA requirements.

54.     The Defendants knowingly misled Plaintiff and the Massachusetts Subclass to believe that they were buying a vehicle that complied with EPA regulations when, in fact, the Defective Vehicles were not as efficient and environmentally friendly as Defendants advertised.

55.     If the Defendants had not engaged in the deceptive omission of material facts described above, Plaintiff and members of the Massachusetts Subclass would have been presented with an informed choice as to whether or not to buy the Defective Vehicles.

56.     The Defendants' unlawful, unfair and deceptive acts were in direct violation of the MGL.

57.     Plaintiff and the Massachusetts Subclass were damaged as a result of the Defendants' conduct.  As a direct and proximate result of Defendants' violation of the MGL, Plaintiff and the Massachusetts Subclass have suffered harm in the form of monies paid for the Defective Vehicles.

58.     Plaintiff, on behalf of himself and the Massachusetts Subclass, seeks an order: (1) requiring Defendants to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendants to restore to Plaintiff and each member of the Massachusetts Subclass any money acquired by means of unfair competition (restitution).

## COUNT II

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

59.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

60.     Plaintiff brings this Count on behalf of himself and the Class.

61.     Plaintiff and the Class conferred benefits on Defendants by, *inter alia*, paying a premium for Defendants' vehicles based on Defendants' representations that the Defective Vehicles complied with all applicable emissions standards, were environmentally friendly, and possessed greater fuel efficiency than comparable gasoline vehicles. Plaintiff and the Class would not have paid for the Defective Vehicles or would have paid less if not for Defendants' false, misleading and deceptive representations.

62.     Defendants have been and will continue to be unjustly enriched at the expense of the Plaintiff and the Class.

63.     Defendants should disgorge the amount by which they have been unjustly enrichment.

## COUNT III

### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

64.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

65.     Plaintiff brings this Count on behalf of himself and the Class.

66.     Defendants entered into a contract when they sold or leased their Defective Vehicles to Plaintiff and the Class.  Upon information and belief, each sale or lease agreement entered into between Defendants and Plaintiff and the Class provide that the Defective Vehicles comply with related warranties, including those concerning CAA and EPA regulatory compliance.

67.     Defendants misrepresented and omitted that their Defective Vehicles were not compliant with current environmental regulations and that they sold vehicles with "defeat devices" to Plaintiff and Class Members.

68.     Defendants materially breached these contracts by, *inter alia*, (a) selling or leasing defective or non-conforming vehicles to Plaintiff and the Class and by concealing, misrepresenting and/or failing to disclose the existence of the defeat device and switches that rendered the Defective Vehicles defective and non-compliant with emissions standards; (b) concealing and failing to disclose that each Defective Vehicle's emissions control system was non-compliant with emissions standards; (c) failing to disclose and misrepresenting that the advertised fuel efficiency and power was not possible with the emissions control system functioning; and (d) thereby enticing

consumers to purchase the Defective Vehicles without disclosing that they were defective and less valuable than as advertised and sold.

69.    Through their willful and wrongful actions, Defendants have breached the covenant of good faith and fair dealing.

70.    Had Plaintiff and the Class known the truth about Defendants' Defective Vehicles, they would not have purchased or leased the Defective Vehicles or would have paid less for them.

71.    As a proximate result of the breach of contract by Defendants, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, punitive damages, attorneys' fees and costs, and other damages allowed by law.

**COUNT IV**

**FRAUD BY CONCEALMENT**
**(On Behalf of Plaintiff and the Class)**

72.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

73.    Plaintiff brings this Count on behalf of himself and the Class.

74.    Defendants affirmatively misrepresented and/or concealed information about the emissions quality and performance characteristics of their Defective Vehicles.

75.    Defendants knew, or reasonably should have known, that their representations alleged herein were materially false and misleading, or that the omission of material facts rendered such representations false or misleading.

76.    Defendants knew, or reasonably should have known, that its representations and omissions would induce Plaintiff and the Class to purchase or lease their Defective Vehicles.

77.     Plaintiff and the Class reasonably relied on the Defendants' false and misleading representations and omissions in deciding to purchase Defendants' Defective Vehicles.

78.     Defendants intended for its misrepresentations and omissions to induce Plaintiff and the Class into purchasing their Defective Vehicles.

79.     Defendants had a duty to disclose these material misrepresentations.

80.     But for Defendants' false and misleading representations and omissions, Plaintiff and the Class would not have purchased or leased the Defective Vehicles, or would have paid less for the Defective Vehicles.

81.     Plaintiff and the Class have suffered damages as a proximate result of Defendants' false and misleading statements and omissions as alleged herein.

82.     Accordingly, Plaintiff and the Class are entitled to punitive damages, attorneys' fees and costs and other damages allowed by law.

## COUNT V

### BREACH OF EXPRESS WARRANTY
### (On Behalf of Plaintiff and the Class)

83.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

84.     Defendants made affirmations of fact and promises to Plaintiff and the Class which related to the performance and emissions standards of the Defective Vehicles, as well as the Defective Vehicles being environmentally friendly.

85.     Defendants' affirmations of fact and promises became part of the basis of the bargain between the parties.

86.     These affirmations of fact and promises created an express warranty that the Defective Vehicles would conform to Defendants' affirmations and promises.

87.     Defendants uniformly warranted all their Defective Vehicles, along with their component parts, against defects in material or workmanship at a time when they knew that the Defective Vehicles contained defeat devices and suffered from serious defects and, nevertheless, continued to market, lease and sell the Defective Vehicles with defeat devices.

88.     Defendants are obligated under the terms of its written warranty to repair, replace, and/or refund the purchase price of the Defective Vehicles sold or leased to Plaintiff and the Class.

89.     Defendants have breached their express warranty, as set forth above, by supplying vehicles with defeat devices in a condition that does not meet the warranty obligations undertaken by Defendants, and by failing to repair or replace the Defective Vehicles.

90.     Defendants have additionally enforced their warranty in bad faith, knowingly and intentionally, by installing the defeat devices with the purpose of bypassing governmental regulated testing, and enabling their Defective Vehicles to perform at the represented high levels of performance.  If the defeat devices were activated such that the Defective Vehicles would pass government regulations, the Defective Vehicles were not, in fact, high performing vehicles as advertised.

91.     Plaintiff and the Class relied on Defendants' advertisements and warranty that the Defective Vehicles were high performing while also eco-friendly.

92.     As a proximate result of Defendants' misconduct, Plaintiff and the Class have been injured.

93.     Had Plaintiff and the Class known the truth about Defendants' Defective Vehicles, they would not have purchased or leased the Defective Vehicles or would have paid less for them.

94.     Accordingly, Plaintiff and the Class are entitled to punitive damages, attorneys' fees and costs and other damages allowed by law.

## COUNT VI

### BREACH OF IMPLIED WARRANTY OF FITNESS
### (On Behalf of Plaintiff and the Class)

95.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

96.     By placing their Defective Vehicles in the stream of commerce, Defendants impliedly warranted that the Defective Vehicles were fit for their intended use, *i.e.*, were both eco-friendly, could pass emissions standards, and were high performing at the same time.

97.     Defendants' Defective Vehicles are not fit for their particular purpose because the vehicles cannot be environmentally friendly and pass the governmental regulated emissions tests, and be high performing at the same time.

98.     Defendants' Defective Vehicles could not be used for their particular use when they left Defendants' control and entered the market.

99.     The defeat and switch devices installed in the Defective Vehicles were not open and/or obvious to consumers.

100.    As a result of Defendants' breach of warranty, Plaintiff and the class have suffered damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, individually and on behalf of all others similarly situated, pray for a judgment:

a.  Certifying this case as a class action on behalf of the Class and the Massachusetts Subclass defined above, appointing Plaintiff as Class representative and appointing the undersigned counsel, Levi & Korsinsky LLP, to be Class counsel;

b.  Requiring Defendants to make whole any losses suffered by Plaintiff and the Class;

c.  Enjoining Defendants from further engaging in any unlawful conduct and requiring that Defendants repair the Defective Vehicles and eliminate the illegal "defeat devices;"

d.  Awarding Plaintiff and the Class appropriate relief, including actual, statutory, and punitive damages, restitution and disgorgement;

e.  Awarding pre-judgment and post-judgment interest;

f.  Awarding reasonable attorneys' fees, expenses, and costs of this action; and

g.  Providing all other and further relief as this Court deems necessary, just, and proper.


**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 12, 2016                    Respectfully submitted:

**LEVI & KORSINSKY, LLP**

By:  ___/s/ Shannon L. Hopkins_____
       Shannon L. Hopkins (BBO #657485)
       Stephanie A. Bartone (BBO # 684270)
       733 Summer Street, Suite 304
       Stamford, CT 06901
       Telephone: (203) 992-4523
       Facsimile: (212) 363-7171
       Email: shopkins@zlk.com
                 sbartone@zlk.com


**LEVI & KORSINSKY, LLP**
Lori G. Feldman
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: lfeldman@zlk.com